## HOEGGER v. F. H. LAWSON & CO.

District Court, S. D. New York. September 27, 1929.

Hoguet & Neary, of New York City (Warren B. Hutchinson, of New York City, of counsel), for plaintiff.

Cooper, Kerr & Dunham and Thomas J. Byrne, all of New York City, and Allen & Allen, of Cincinnati, Ohio, for defendant.

CAFFEY, District Judge. Motion by defendant to set aside service of process.

The suit is for infringement of United States letters patent. An injunction and accounting are sought. The articles involved are wall cabinets. The bill was filed August 3, 1929. The subpœna was served August 12, 1929.

The bill alleges that the defendant has a regular place of business at 169 Duane street, New York City, which is within this district. Service was made at the Graybar building, 420 Lexington avenue, in the borough of Manhattan, which is also within this district. The return of the marshal recites that the service was on S. X. Newman as manager of the defendant company engaged in and conducting the business of the company at the last-named address.

■ The defendant is not an inhabitant of this district. It was agreed at the argument that whether the service is good is determinable exclusively under section 48 of the Judicial Code (28 USCA § 109). In order to bring the service within that section it is necessary that the plaintiff show (1) that when process was served the defendant had a "regular and established place of business" within this district; (2) that the defendant had previously committed within this district "acts of infringement" of the letters patent involved; and (3) that Mr. Newman when served was the agent of the defendant conducting for it in this district business at a place therefor which was "regular and established" for that purpose.

■ The defendant is an Ohio corporation. Its chief office and place of business is at Cincinnati. It there manufactures wall cabinets (including a cabinet, model No. 925, of the type claimed to infringe plaintiff's patent), laundry appliances, and various other articles. Mr. Newman solicits business for it. He interviews prospective customers in New York and other nearby Eastern states. When he obtains an order, it is forwarded to the Cincinnati office. He is a salesman of the defendant, but he is not authorized to, and does not consummate sales. When an order procured by him reaches Cincinnati it is subject there to acceptance or rejection. If it be accepted, the goods are shipped direct to the customer. The terms are uniformly

f. o. b. Cincinnati. Title passes on delivery to the carrier there. Save in the single instance of the sample later mentioned, no delivery appears ever to have been made from the New York office or elsewhere in New York. All billing and collections are direct from the Cincinnati office. All payments are remitted by customers direct to the Cincinnati office. Mr. Newman has nothing to do with shipments, billing, collections, or payments incident to orders he sends to the defendant.

The compensation of Mr. Newman consists partly of salary and partly of commissions or bonus on sales effected by his solicitation. The defendant also bears his traveling expenses when he is traveling on its account. He is paid for all these items by periodical remittance of checks to him from the Cincinnati office.

Lawrence Burrows, who has no relation to defendant or its business, occupies space in the Graybar building. He sublets to the defendant a portion of that space. Monthly the defendant pays the rent for that portion by means of checks sent to him direct from the Cincinnati office. Through arrangement between defendant and Mr. Newman, the latter reimburses defendant for a portion of the rent. This is done because heretofore he has used and in future contemplates using the office partly in carrying on agency representation by him of another concern or of other concerns.

Mr. Newman has at the Graybar office stationery of the defendant, including letterheads bearing its name, together with the address of his New York office. One of these before me has stamped on it "New York Office The F. H. Lawson Co. 2558 Graybar Bldg. Phone Lexington 1818." Mr. Newman has in the office samples of defendant's wall cabinets and of its other products furnished by defendant; also printed advertising matter of a variety of the products of defendant. Upon three of the advertising sheets produced (Exhibits A, N, and O to affidavit of Ulmont Cumming) the address of the defendant is given as Cincinnati. Upon the remaining sheets (Exhibits A to M and P) no address is given. Upon one (Exhibit A) addresses for the defendant are also given in New York and Chicago. That for New York is "New York Office: 2558 Graybar Bldg."

At 101 Park avenue, borough of Manhattan, the Architects' Samples Corporation has a room in which various manufacturers maintain exhibitions of articles needed in the building industry. The sole purpose of the

display is to enable architects, by examining the samples, to select fixtures or other appendages for inclusion in specifications for buildings. No sales occur there. No representative of any exhibitor is stationed there. For a number of years the defendant has had an exhibit at this address. Along with samples of its products were kept its advertising pamphlets. The rent for the space defendant thus occupies is paid one-half by the defendant and one-fourth each by two customers of the defendant in New York City who handle its products as well as the products of numerous other concerns—not as agents of the defendant or other manufacturers but as outright owners in the ordinary course of business. Its share of this rent is paid by defendant from the Cincinnati office and is charged to advertising.

One of such distributors of products of the defendant, and a participant in paying the rent for the space in which samples of articles of the defendant are exhibited as last described, is Cortes-Ward Company, whose place of business is at 169 Duane street, borough of Manhattan. This concern purchases wall cabinets and other articles from defendant through direct dealings with its Cincinnati office. Defendant in fact has no warehouse and stores no goods at this address. Nevertheless, its name appears in the telephone directory under the same number and at the same address as given also in the directory for the Cortes-Ward Company.

Subsequent to the service of the subpoena Miss Reilly, described as secretary to Mr. Newman, under date of September 16, 1929, wrote a letter in the name of and on the letterhead of the defendant to International Service Corporation, 11 West Forty-Second street, this city, marked for the attention of Mr. Cumming. In this she told him that his understanding stated in his letter of September 5 was correct; that "We have a warehouse at 169 Duane street, and can make deliveries right out of New York stock."

Subsequent to the service of the subpoena, between September 3 and 10, 1929, Mr. Cumming, a representative of the International Service Corporation, says that he made a telephone inquiry of the Graybar building office of defendant and that the office manager replied "they had a warehouse at 169 Duane street * * * in which they carried stocks of goods and that deliveries could generally be made at once from the warehouse."

About April or May, 1929, several months preceding service of the subpoena, Thomas Carroll, a distributor of bathroom accessories in Jersey City, had dealings with Mr. Newman at the Graybar building office about the purchase of a wall cabinet, model 925, manufactured by defendant (of the type, as previously stated, which plaintiff contends infringes his patent as charged in the bill). Mr. Newman then had on hand at his office several samples of defendant's wall cabinets. He agreed to sell Mr. Carroll one of these samples which was shopworn. It is said by Mr. Newman, and not denied by Mr. Carroll, that Mr. Carroll represented at the time that he wished to obtain the article for use in carrying on his Jersey City business as a sample in soliciting customers; also that he desired to handle defendant's line at Jersey City and to purchase products of defendant direct from its Cincinnati office and that he did not wish to buy from or deal with Cortes-Ward Company. When Mr. Carroll first negotiated with Mr. Newman, he did not have his automobile with him. On May 20, 1929, he returned to the Graybar office, armed with a note from Mr. Newman, and saw Miss Reilly. He then bought, paid for, and carried away in his car the sample wall cabinet mentioned. Mr. Newman was in the office at the time, but the transaction was concluded with Miss Reilly. Mr. Carroll wanted to pay cash and did so. Miss Reilly gave him a receipt for the money, $27 (Exhibit 1 to Carroll affidavit), reciting that the article was sold "at list less 50-10%, on account of being shop-worn sample." Later Mr. Carroll delivered the cabinet to the plaintiff, presumably for use as evidence in this suit.

Upon these facts, supplemented to some extent by others to be stated later, determination of the law questions involved depends.

The keeping by defendant within a district of an office for the use of a soliciting salesman, whose authority is confined to obtaining orders from customers and sending them to the home office in another district subject to acceptance or rejection there, is not having "a regular and established place of business" in the district of suit. W. S. Tyler Co. v. Ludlow-Saylor Wire Co., 236 U. S. 723, 35 S. Ct. 458, 59 L. Ed. 808.

The maintenance of the office and the conduct of the business in the way just described are all the pertinent acts that I can find satisfactorily established to have been done by the defendant in the Southern District of New York. All other acts relied on by plaintiff to sustain the service will be commented on in order.

1. The supplemental fact that a single shopworn sample—plainly sent to New York by defendant and kept there by Mr. New-

man solely for purposes of exhibition and not for sale—was sold and delivered by Miss Reilly to Mr. Carroll at the Lexington avenue office is not enough to convert that office into the kind of place, prescribed by the statute—"regular and established"—for carrying on defendant's business in New York. That seems obvious from mere statement. This is particularly true since the incident was isolated and it cannot even be fairly inferred from the evidence that it occurred with the knowledge, much less with the sanction, of the defendant. See American Electric W. Co. v. Lalance & Grosjean Mfg. Co. (D. C.) 256 F. 34, 36.

2. Mr. Cumming says that about a month after service of the subpoena he was told by defendant's office manager over the telephone that "they," and the secretary of the soliciting salesman, more than a month after service of the subpoena, said in writing that "we" had a warehouse at 169 Duane street and could make deliveries out of New York stock. Yet these statements, when taken in connection with all the other proof, are insufficient as admissions by defendant that it then was maintaining a "regular and established place of business" at that address. Apart from other possible defects, the statements indicate only that products of the defendant were kept in a warehouse or in stock at the address given and could be obtained there by customers. I think, in the light of the evidence, that the true meaning of those who made the statements was no more than that Cortes-Ward Company were prepared at the address given to supply products of the defendant; that the intention was merely to facilitate prospective customers in obtaining promptly and directly from Cortes-Ward Company, at 169 Duane street, products of the defendant; and that there was no purpose to represent that the defendant itself owned or operated a warehouse at 169 Duane street or itself there made direct deliveries out of stock. The words "they" and "we," used in the way they were employed, are not so unambiguous in import as properly to be interpreted except in conjunction with the other facts or as adequate to fasten on defendant an admission that it individually had a warehouse at, or delivered goods from, this address. I am convinced by the proof that the defendant did not, within this district, either at 169 Duane street or elsewhere, maintain a warehouse or make deliveries out of stock. In consequence, what is shown with respect to the Duane street address does not tend to show that the defendant had there a place of business, much less that it had

there "a regular or established place of business."

3. The display of samples, for examination by architects, at 101 Park avenue was simply an advertising venture. It was clearly far below what is required to bring the exhibition room there within the class of "a regular and established place of business" maintained by a nonresident manufacturer. See L. E. Waterman Co. v. Parker Pen Co. (C. C.) 100 F. 544; Winterbottom v. Casey (D. C.) 283 F. 518, 521.

The mere sale to Mr. Carroll of the shopworn sample, under the circumstances already described, is insufficient to establish an act of infringement. See American Electric W. Co. v. Lalance & Grosjean Mfg. Co. (D. C.) 256 F. 34, 37, 38. I am also inclined to think that no other act of defendant within this district disclosed by the evidence shows infringement. In view, however, of the conclusion reached on my first inquiry above, it is unnecessary now to determine the question of infringement.

Lastly, the proof shows that Mr. Newman, upon whom the subpoena was served, did not conduct business of the defendant either at 169 Duane street or at 101 Park avenue. It has already been demonstrated that what was done at or from the Graybar Building office did not bring that office within the class of "a regular and established place of business" of the defendant. It follows that Mr. Newman was not "engaged in conducting" for defendant the type of business required to render him subject to service as the agent of defendant pursuant to section 48 of the Judicial Code.

Motion granted.